STATE of Wisconsin, Plaintiff-Respondent,

v.

David S. GORDON, Defendant-Appellant.

Court of Appeals

*No. 90–1155–CR. Submitted on briefs October 31, 1990.—Decided November 27, 1990.*

(Also reported in 464 N.W.2d 91.)

337

338

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Ruth Bachman,* assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. David Gordon appeals an order denying his motion to suppress evidence. After a hearing on the motion, Gordon entered a plea of no contest to a charge of possession of a controlled substance with intent to deliver in violation of sec. 161.41(1m)(h)1 and 161.14(4)(t), Stats. The trial court withheld sentence and placed Gordon on probation for a period of thirty months.[1]

Gordon contends that the trial court erred by ruling that the warrantless seizure of a package delivered by Express Mail to the front desk of his dormitory was reasonable; redacting a portion of the contents of communications from an anonymous informer prior to disclosure to Gordon; and ruling that the search warrant was valid on the grounds that it did not misrepresent or omit a critical fact under the standard of *Franks v. Delaware,* 438 U.S. 154 (1978). We reject Gordon's claims and affirm the trial court's order.

On April 10, 1989, the Madison police received a phone call from an anonymous informer who stated that Gordon was going to receive a shipment of one pound of marijuana and a few ounces of cocaine "via a private carrier like UPS or Federal Express from possibly Arizona either tomorrow or sometime this week." The caller further stated that Gordon had received shipments from New York before, but that he usually receives them from Arizona. The caller told police that Gordon was a student at the University of Wisconsin-Madison, and lived

---

[1]The sentence was stayed pending determination of this appeal.

alone in a single room in the Towers, a private dormitory on Frances Street in Madison.

Two days later, the same caller contacted the police again and told them that Gordon was to receive a drug shipment via UPS or another carrier on Friday, April 14. The informant said that Gordon could possibly have this package shipped to a friend and then retrieve it from the friend, but the informant considered this to be unlikely.

Sergeant Hartwig of the Madison police proceeded to verify the information received from the anonymous caller. Hartwig testified that he spoke with the manager of the Towers, and the manager described Gordon's apartment area as "two private rooms with an adjoining kitchen in between them, and that each was occupied by one person." Susan Deering, the office manager at the Towers, testified at the motion hearing and agreed to Gordon's counsel's characterization of the unit as "equivalent to a two-bedroom apartment, two separate bedrooms." She further testified, however, that the other private room that shared kitchen and bath facilities had a different room number and a separate lease agreement and that Gordon's lease agreement described the area as a "[s]ingle kitchen."

Hartwig requested that the front desk personnel at the Towers hold any package that might come addressed to Gordon. After nearly three weeks, at 2 p.m. on May 2, the front desk clerk called Hartwig and told him that a package had arrived that day for Gordon. At approximately 4 p.m., Detective Mahoney arrived to pick up the package. Hartwig testified that Milwaukee was the closest location with a drug-sniffing dog. He was informed that a dog would be available at the Milwaukee airport sometime after 3 p.m. Hartwig instructed Mahoney to take the package to Mitchell Field, where it was exposed to a canine sniff for drugs at approximately 7:30 p.m.

341

The dog alerted on the package indicating that it contained drugs.

Mahoney took the package back to Madison and placed it in an evidence locker overnight. The following day, Hartwig assisted in preparing a search warrant application and made arrangements for observation of the package after its re-delivery to the Towers. The package was returned to the front desk at approximately 3:45 p.m. A judge issued a search warrant at approximately 4 p.m. Hartwig testified that the package was never opened during the entire time it was in police custody.

Gordon first contends that the trial court erred by ruling that the warrantless seizure of the package was reasonable. On review of a denial of a suppression motion, the trial court's findings of fact will be upheld unless they are clearly erroneous. Section 805.17(2), Stats. Whether those facts satisfy the constitutional requirement of reasonableness, however, presents a question of law subject to independent review. *State v. Jackson*, 147 Wis. 2d 824, 829, 434 N.W.2d 386, 388 (1989).

The trial court held that the police required only reasonable suspicion and not probable cause to justify the seizure of the package from the front desk of Gordon's dormitory. *See United States v. Place*, 462 U.S. 696, 703 (1983) (when the nature and the extent of the detention are minimally intrusive of the individual's fourth amendment interests, the opposing law enforcement interests can support a seizure of luggage in transit based on less than probable cause); *United States v. Van Leeuwen*, 397 U.S. 249, 253 (1970) (detention of a first-class mail package for twenty-nine hours prior to the establishment of probable cause to justify a search warrant for its inspection is not unreasonable when based on

a totality of suspicious circumstances); *United States v. LaFrance*, 879 F.2d 1, 4 (1st Cir. 1989) (despite the absence of probable cause, the seizure of a sealed package entrusted to a private parcel service based on reasonable suspicion that the package contained contraband was lawful). The theoretical underpinning for this line of luggage and package seizure cases is the *Terry* exception to the probable cause requirement, articulated in *Terry v. Ohio*, 392 U.S. 1, 38 (1968); *see also Place*, 462 U.S. at 702-03.

Gordon argues that the trial court erred on two alternative grounds: (1) Because the package addressed to Gordon had been delivered to his agent, it was in Gordon's possession, and therefore the *Place-Van Leeuwen-LaFrance* reasonable suspicion standards do not apply or (2) if the *Place-Van Leeuwen-LaFrance* standards do apply, the police here did not have reasonable suspicion to seize Gordon's package. We address each argument in turn.

Gordon cites *United States v. Jacobson*, 466 U.S. 109 (1984), for the proposition that "a seizure of delivered mail unquestionably requires probable cause and a warrantless seizure of delivered mail is unlawful unless there are exigent circumstances." Gordon misstates the partial holding of *Jacobson*, which dealt with the legality of a warrantless *search* of a closed container seized while in its owner's possession. *Id.* at 120 n.17. The police here did not search the contents of Gordon's package until after the canine sniff established probable cause and a warrant was obtained.

██
Gordon mistakenly concludes that the luggage and package seizure cases can be distinguished from the present case on the grounds that the owner of a piece of luggage or a package has a stronger possessory interest

for fourth amendment purposes after the item has been delivered to an "authorized agent."[2] In fact, that entire line of cases recognized the possessory interest of the individual in the package or luggage in transit. It is this possessory interest that subjects the seizure of the item to scrutiny on fourth amendment grounds. *See Place,* 462 U.S. at 702; *Van Leeuwen,* 397 U.S. at 252–53; *LaFrance,* 879 F.2d at 4. We have not found any authority granting a stronger possessory interest in a package when it is delivered to a third party, even if that party is authorized to receive the package. We conclude that Gordon's package could be seized from the front desk of the Towers for an appropriately limited investigative detention, *see LaFrance,* 879 F.2d at 7–10, based on reasonable suspicion alone.

Gordon argues, in the alternative, that the police did not have the requisite reasonable suspicion to seize Gordon's package because the informer was incorrect about the carrier that would be delivering the package, and about the date on which the package would arrive. Corroboration by police of innocuous details of an anonymous tip may under the totality of the circumstances give rise to reasonable suspicion to make a *Terry* stop. *State v. Richardson,* 156 Wis. 2d 128, 142, 456 N.W.2d

---

[2]The record does not support a conclusion that the Towers personnel were Gordon's agents for the receipt of mail. The only documentary evidence of any "agency" is a form on file with the post office, indicating that the Towers *assumes responsibility for* registered mail delivered to an authorized representative of a hotel, apartment house, or the like. The form represents an agreement between the post office and the Towers management, and designates those the Towers considers authorized representatives for the receipt of mail. There is no evidence that Gordon made these employees *his* "authorized agents."

830, 835 (1990). The cumulative detail, along with reasonable inferences and deductions that a reasonable officer could glean therefrom, is sufficient to supply the reasonable suspicion necessary to justify the stop. *Id.*

Here, the police verified the informer's report of Gordon's name, address and living arrangements in the Towers. The package that was seized came, as the informer predicted was most likely, from Arizona. It was delivered by Express Mail, which could certainly be considered "a private carrier like UPS or Federal Express." Hartwig further testified that, based on his training and experience, sending drugs through the mail is a common method of shipping controlled substances, and that Arizona is an area of the country from which marijuana is commonly shipped. The fact that no packages arrived addressed to Gordon on the days mentioned by the informer does not make the informer untrustworthy because the caller indicated that Gordon had alternative methods for receiving these shipments. Under the totality of the circumstances, the police had grounds for reasonable suspicion to seize Gordon's package when it arrived.

As to the reasonableness of the subsequent detention of the package for approximately five and one-half hours to establish probable cause, we must examine two relevant factors: the investigatory diligence exhibited and the length of detention. *LaFrance,* 879 F.2d at 7-10.[3] As to the first factor, the trial court found that

---

[3]As to a third factor, information conveyed to the suspect, which is considered where third-party seizure implicates liberty as well as possessory interests, we agree with the *LaFrance* court that "there is no rule of law which placed the police under an obligation, at least in these early hours, to telephone the parcel's

"the police officers did act with due diligence." This finding is supported by the record. Hartwig attempted to have the Milwaukee drug-sniffing dog brought to the Madison area or to some point between Madison and Milwaukee, but was told that this would not be possible. He then made arrangements to transport the package to Milwaukee. The officer arrived in Milwaukee at approximately 7 p.m., and just one-half hour later the dog alerted on the package, indicating that it contained contraband.

With respect to the length of detention prior to the establishment of probable cause,[4] we conclude that the five-and-one-half hour time period during which this package was held based only on reasonable suspicion was not inherently unreasonable. For these reasons, the investigative detention of Gordon's package was permissible under the fourth amendment.

Gordon next contends that the trial court erred by redacting a portion of the informer's statements after an *in camera* review, prior to disclosure to Gordon or his counsel. We review the trial court's decision under the abuse of discretion standard. *See State v. Outlaw,* 108 Wis. 2d 112, 114–15, 321 N.W.2d 145, 148 (1982). At the motion hearing, the state invoked the privilege protecting the identity of an informer embodied in sec. 905.10, Stats. The statute lists several exceptions to the privi-

---

intended recipient and tell him the nature and cause of the delay." *Id.* at 9.

[4]Gordon does not allege interference with his possessory interest in the package from the time probable cause was established at 7:30 p.m. until the package was re-delivered to the front desk of his dormitory on the following day, thus we do not address this issue.

346

lege, and the trial court followed the procedure outlined in sec. 905.10(3)(c):

> *Legality of obtaining evidence.* If information from an informer is relied upon to establish the legality of the means by which evidence was obtained and the judge is not satisfied that the information was received from an informer reasonably believed to be reliable or credible, he may require the identity of the informer to be disclosed. The judge shall on request of the federal government, state or subdivision thereof, direct that the disclosure be made in camera. All counsel and parties concerned with the issue of legality shall be permitted to be present at every stage of proceedings under this subdivision except a disclosure in camera at which no counsel or party shall be permitted to be present. If disclosure of the identity of the informer is made in camera, the record thereof shall be sealed and preserved to be made available to the appellate court in the event of an appeal, and the contents shall not otherwise be revealed without consent of the appropriate federal government, state or subdivision thereof.

Gordon argues that the plain language of the statute protects only the identity of the informer, not the contents of the communication. In *Roviaro v. United States,* 353 U.S. 53, 60 (1957), however, the United States Supreme Court stated that "where the disclosure of the contents of a communication *will not tend to reveal the identity* of an informer, the contents are not privileged." (Emphasis added.) We conclude that the informer privilege protects the contents of a communication that will tend to reveal the identity of an informer.

In *McCray v. Illinois,* 386 U.S. 300, 312 (1967), the Court further delineated the extent of the privilege, say-

ing that it had "consistently declined to hold that an informer's identity need always be disclosed in a federal criminal trial, *let alone* in a preliminary hearing to determine probable cause for an arrest or search." (Emphasis added.) Gordon attempts to distinguish *McCray* on the grounds that police officers testified at length in *McCray* on what the informer said and why the officers thought the information was credible. In *McCray*, the state was required to establish probable cause to sustain the arrest and incidental search, *id.* at 304, while here the state needed only to establish grounds for reasonable suspicion. "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama v. White,* 110 S. Ct. 2412, 2416 (1990).

The ninth circuit evaluated the results of an *in camera* hearing to establish probable cause and stated that, where there was no evidence that the informer could have provided testimony relative to a defense on the merits, "[i]f the trial judge is satisfied that an *in camera* hearing in which neither the defendant nor his attorney participates is adequate to explore the foundations of the informant's information, then no disclosure [of either the name of the informant or the underlying circumstances which made the conclusion seem reliable to government agents] is necessary." *United States v. Anderson,* 509 F.2d 724, 730 (9th Cir. 1975). The trial court here provided Gordon with all of the nonidentifying contents of the informer's communications, and redacted only such information as would tend to identify the

informer. We hold that the trial court did not abuse its discretion in following this course.

Nor did the trial court abuse its discretion when it considered the redacted identifying information when ruling on whether the police had reasonable suspicion to justify a detention of Gordon's package. We note that it is reasonable for a trial court to rely, at least in part, on the identity of an informant, or identifying information concerning the informant, when ruling on the issue of reasonable suspicion. If such reliance were not allowed, the *in camera* proceedings allowed under sec. 905.10(3)(c), Stats., would have no purpose. We further note that in our analysis of whether the police had reasonable suspicion to detain the package, we have not relied on any information identifying the informant.

Next, Gordon contends that the trial court abused its discretion by not stating on the record its reasons for deciding to redact the information, citing *State v. Larsen,* 141 Wis. 2d 412, 420, 415 N.W.2d 535, 538 (Ct. App. 1987). We disagree. *Larsen* dealt with sec. 905.10(3)(b), Stats., an exception to the privilege based on the ability of the informer to provide testimony on the merits. We have previously distinguished the substantial preliminary showing required to entitle a defendant to disclosure of an informer's identity when the legality of obtaining evidence is at issue under sec. 905.10(3)(c) from the "minimal burden" imposed when an informer could provide testimony on the merits under sec. 905.10(3)(b). *See State v. Fischer,* 147 Wis. 2d 694, 702-03, 433 N.W.2d 647, 651 (Ct. App. 1988). Similarly, the specificity of the trial court findings required to support a decision to allow invocation of the privilege varies depending on the claimed exception.

The trial court, after its *in camera* view of the entire contents of the informer's communication, stated for the record "although this is an anonymous informant, Exhibits 1 and 2 do contain information which could tend to identify the source of that information." In its ruling on the reasonableness of the seizure of the package, the court stated, "I think any reasonable interpretation of that evidence . . . would lead one to believe that the police at that point in time had a reasonable, articulable suspicion which would justify a detention of the property." In short, the court found that (1) the redacted information tended to identify the informant, and (2) it was satisfied after the *in camera* proceeding that the informer could reasonably be believed to be reliable and credible. We hold that no more specific finding was required of the trial court here.

Finally, Gordon contends that the search warrant was invalid on the grounds of misrepresentation or omission of a critical fact under the standard of *Franks*. The *Franks* procedure was extended in *State v. Mann,* 123 Wis. 2d 375, 388, 367 N.W.2d 209, 214–15 (1985) (a warrant affidavit may be impeached if a material fact has been omitted from it and if the omission is the equivalent of a deliberate falsehood or reckless disregard for the truth). Gordon contends that one misrepresentation and one omission invalidated the search warrant application. Had the issuing magistrate been exposed to all the information available, Gordon urges, he would have called into question the informant's reliability.

The alleged misrepresentation is that the complaint filed in support of a search warrant stated that the informer during the April 10 call reported that the shipment "would arrive either the following day or some time

350

*in the following week,"* (emphasis added), and the police report of the call stated that the informer had said that the shipment would be received "either tomorrow or sometime *this week."* (Emphasis added.) As the search warrant application detailed the arrival of the suspect package on May 2, and that date was later than either of the informer's reported estimates, we reject without discussion the contention that such "misrepresentation" was material. *See Franks,* 438 U.S. at 155–56.

The alleged omission is that the complaint contained no mention of the informer's April 12 call. The *Mann* court held that an omitted fact must be "undisputed, capable of single meanings and critical to a probable cause determination" in order to be viewed as the "reckless disregard for the truth" required by *Franks. Mann,* 123 Wis. 2d at 388, 367 N.W.2d at 214. The caller on April 12 told the police that Gordon was to receive a drug shipment via UPS or another carrier on Friday, April 14. The informant said that Gordon could possibly have this package shipped to a friend and then retrieve it from the friend, but the informant considered this to be unlikely. The fact that a package did not arrive on April 14 is capable of several meanings other than a conclusion that the caller was unreliable, one provided in the text of the communication itself. Here, as in *Mann,* the omitted facts are not sufficient to meet the threshold requirements of warranting a *Franks* hearing. The order of the trial court is affirmed.

*By the Court.*—Order affirmed.